UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JUAN FLAGG, )
)
      Petitioner, )
)
v. ) No. 2:18-cv-00338-WTL-DLP
)
WARDEN Wabash Valley Correctional Facility, )
)
      Respondent. )

**Order Denying Petition for a Writ of Habeas Corpus**

Petitioner Juan Flagg was convicted in an Indiana state court of one count of murder, one count of attempted murder, one count of robbery, one count of aggravated battery, and one count of dealing in cocaine. Mr. Flagg now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging everything but the conviction for dealing in cocaine. He alleges that trial counsel was ineffective on seven grounds. Three of those grounds are procedurally defaulted, and the other four are barred by 28 U.S.C. § 2254(d), without merit, or both. Therefore, Mr. Flagg's petition for a writ of habeas corpus is **denied**, and a certificate of appealability will not issue.

**I. Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history:

> During the early morning hours of December 16, 2007, Lamonica Radford and Anthony Graves were sleeping on their living room couch in their Indianapolis home. Six children and Lamonica's uncle, Kevin Radford, were sleeping in the home's two bedrooms. At approximately 6:30 a.m., Flagg, whose nickname is

'Boy Boy,' and another man kicked in the door of the home. Flagg was wearing a mask over part of his face and carrying a gun. Flagg shot Graves in the chest, killing him. Flag also shot Lamonica in the knee. Flagg said to Lamonica, "B****, give me the s*** or I'm going to kill you." Lamonica thought Flagg was referring to money from several paychecks that Graves had recently cashed. Lamonica ran from the living room to one of the bedrooms, where her daughter had been sleeping. Lamonica and her daughter held the door shut. Flagg threatened to shoot Lamonica's nephew if she did not open the door. Flagg shot through the bedroom door and struck Kevin, who had been sleeping on the bedroom floor, in the leg. During the incident, Flagg said to Lamonica, "Remember Boy Boy did this."

On December 19, 2007, Flagg was arrested outside of his girlfriend's apartment.[1] During a search of Flagg's girlfriend's apartment, a 9 mm handgun was discovered under a mattress. This handgun was later determined to be the weapon used in the shooting.

* * *

[1] When Flagg was arrested, he had twenty-seven grams of cocaine and another handgun in his possession. In a separate charging information, Flagg was charged with Class A felony dealing in cocaine [and several related counts]. Flagg was tried on these allegations along with the December 16, 2007 allegations and was convicted of the Class A felony dealing charge.

*Flagg v. State*, 2009 WL 4892533, at *1 and n.1 (Ind. Ct. App. Dec. 18, 2009) ("*Flagg I*") (record citations omitted).

On post-conviction review, the Indiana Court of Appeals added more factual summary:

[T]he State introduced expert testimony regarding DNA testing performed upon four swabs taken from the murder weapon. Forensic scientist Tanya Fishburn ("Fishburn") testified that there were more than two contributors of DNA and Flagg was "not eliminated" as a contributor. Fishburn estimated that the probability of an unrelated individual being a contributor was 1 in 1,000 Caucasians, 1 in 200 African Americans, and 1 in 2,000 Hispanics. DNA samples from the shell casings produced inconclusive results, as was expected. During testing, Fishburn learned that DNA belonging to a crime lab employee was present on a sample; the sample was discarded. She denied using any contaminated sample in obtaining admissible results. Fishburn summarized her ultimate conclusion, that is, "nothing tested" led her to "say with any level of certainty" that Flagg's DNA was present.

*Flagg v. State*, 2018 WL 2144364, at *5 (Ind. Ct. App. May 10, 2018) ("*Flagg II*") (record citations and footnote omitted).

Following Mr. Flagg's conviction, the appellate court affirmed on direct appeal, and the Indiana Supreme Court denied leave to transfer.

Mr. Flagg next filed a post-conviction petition in the state trial court. *See Flagg II*, 2018 WL 2144364, at *2. Appointed counsel withdrew from representation, and the trial court denied the post-conviction petition following a hearing. Dkts. 6-13, 6-14. Mr. Flagg appealed, arguing (as relevant here) that trial counsel was ineffective for failing to (a) impeach Ms. Radford with a prior inconsistent statement regarding her marijuana use, (b) investigate and call Ms. Radford's nine-year-old nephew, S.C., (c) move to sever the dealing in cocaine charge, and (d) move to suppress all DNA evidence. Dkt. 5-9 at 16−33. The appellate court affirmed, and the Indiana Supreme Court denied leave to transfer.

Mr. Flagg filed a habeas corpus petition in this Court on August 2, 2018. Dkt. 1. Read in the light most favorable to petitioner, the petition alleges that trial counsel was ineffective for failing to (1) impeach Ms. Radford with a prior inconsistent statement about details of what she saw, (2) impeach Ms. Radford with a prior inconsistent statement regarding her marijuana use, (3) investigate and call S.C., (4) move to sever the dealing in cocaine charge, (5) move to suppress DNA evidence, (6) retain an expert to perform a voice analysis on the 9-1-1 call, and (7) allow Mr. Flagg to testify in his own defense. *Id.* at 9−25.

## II. Procedurally Defaulted Allegations (Grounds 1, 6, and 7)

Before seeking federal habeas corpus review, "a petitioner must assert his federal claim through one complete round of state court review, either on direct review or in post-conviction proceedings." *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[T]he prisoner must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." (quotation marks omitted)).

3

If a petitioner has failed to present his claim through one complete round of state court review and there is no remaining opportunity for him to do so, the claim is procedurally defaulted. *Bolton*, 730 F.3d at 696. Where a petitioner alleges that counsel was ineffective in multiple ways, "the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default" of that complaint. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

Ground 1 alleges that trial counsel was ineffective for failing to impeach Ms. Radford with a prior inconsistent statement about details of what she saw. Ground 6 alleges that counsel was ineffective for failing to retain an expert to perform a voice analysis on the 9-1-1 call. Ground 7 alleges that trial counsel prevented Mr. Flagg from testifying at trial. Mr. Flagg did not present any of these complaints about counsel's performance to the Indiana Court of Appeals. *See generally* Dkt. 5-3 (raising no ineffective assistance arguments on direct appeal); dkt 5-9 (raising other complaints about counsel's performance on post-conviction appeal). They are therefore defaulted. *Bolton*, 730 F.3d at 694; *Stevens*, 489 F.3d at 894.

A petitioner can salvage a procedurally defaulted claim by showing "either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Mr. Flagg argues that he is innocent of the crimes for which he was convicted and suggests that his innocence constitutes a fundamental miscarriage of justice. To excuse a procedural default based on a showing of innocence, the petitioner "must have 'new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial,' and must persuade the district court that it is 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Jones v.*

*Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995)) (internal citations omitted).

Mr. Flagg identifies two main pieces of new evidence that were not presented at trial:

- Ms. Radford's pretrial deposition testimony suggesting that both she and her boyfriend had been shot before the shooter opened the door to her home; and

- S.C.'s pre-trial statements to police that he was not threatened on the night of the crimes.

This new evidence does not satisfy the *Schlup* standard, particularly in light of the State's strong case at trial. Ms. Radford, who had known Mr. Flagg for years, told the first responding officer within minutes of the shootings that Mr. Flagg was the gunman. And when Mr. Flagg was arrested three days later outside his girlfriend's apartment, police found the murder weapon in the apartment under a mattress. Even with Mr. Flagg's new evidence, which is impeaching at best, reasonable jurors still would be expected to convict him.

Mr. Flagg also argues that ineffective assistance of post-conviction appellate counsel is cause to excuse the defaults. *See* Dkt. 1 at 17−18 (blaming the default on "p.c.r. appeal attorney's incompetence . . . not raising issues without [conferring] . . . with the petitioner about <u>not</u> raising issues previously agreed upon"). That argument is foreclosed by Supreme Court precedent. *See Coleman*, 501 U.S. at 752–54 (ineffective assistance of post-conviction counsel cannot be cause to excuse a default); *Martinez v. Ryan*, 566 U.S. 1, 16 (2012) (creating an exception to *Coleman* for ineffective assistance of counsel on initial post-conviction review but noting that "[t]he rule of *Coleman* governs . . . appeals from initial-review collateral proceedings").

**III. Allegations Barred by 28 U.S.C. § 2254(d) or Otherwise Without Merit (Grounds 2−5)**

Federal habeas corpus relief is available only to petitioners in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Where, as here, a state court

5

has adjudicated the merits of the petitioner's claims, the petitioner must also show that the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Courts apply § 2254(d) to the "last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). Where that decision set forth reasons for denying petitioner's claim, the court on federal habeas review "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

If the last reasoned state court decision did not adjudicate the merits of a claim, or if the adjudication was unreasonable under § 2254(d), federal habeas review of that claim is *de novo*. *Thomas v. Clements*, 789 F.3d 760, 766−68 (7th Cir. 2015).

Petitioner alleges only ineffective assistance of trial counsel. To succeed on this claim, he must show that counsel's performance was deficient and prejudicial. *Maier v. Smith*, 912 F.3d 1064, 1070 (7th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 689−92 (1984)). Deficient performance means that counsel's actions "fell below an objective standard of reasonableness," and prejudice in this context requires "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

### A. Failure to impeach Ms. Radford with prior admission of marijuana use (Ground 2)

Ms. Radford testified at trial that she drank heavily the night before (and morning of) the shootings, but she denied using marijuana. Dkt. 6-4 at 139. But the parties stipulated that when Ms. Radford was admitted to the hospital after the shootings, she reported having used marijuana the night before.

Mr. Flagg complains that trial counsel failed to "impeach, confront, [and] develop" Ms. Radford's testimony. Dkt. 1 at 14. The state post-conviction appellate court addressed a related claim, but perhaps not the same one, finding "no deficiency in the omission of a request for admonishment to the jury" regarding Ms. Radford's testimony. *Flagg II*, 2018 WL 2144364, at *4. The Court need not sort through difficult questions of fair presentment, *see Baldwin*, 541 U.S. at 29, or presumptive merits adjudications, *see Johnson v. Williams*, 568 U.S. 289, 298 (2013), because this allegation does not warrant relief even under *de novo* review.

Counsel's performance was neither deficient nor prejudicial. Instead of confronting and shaming Ms. Radford — the victim of an attempted murder — about her marijuana use, counsel stipulated to evidence that contradicted Ms. Radford's account. Dkt. 6-5 at 217. Counsel also emphasized in closing argument that Ms. Radford's marijuana use likely affected her perception and memory of the crime. Dkt. 6-6 at 52 ("Ms. Radford told you that she had been drinking and medical records reflect that she was also smoking marijuana. . . . [A]ll these factors affect a person's ability to perceive."). This was a reasonable trial strategy, especially given counsel's reluctance to be seen as attacking the victims. *Id.* (counsel explaining in closing argument that he was "[a]bsolutely not" putting the victims "on trial").

7

Counsel's actions were also not prejudicial. The jury needed no reminder of Ms. Radford's mental state on the morning of the shootings; she acknowledged that she was "still intoxicated" when the shootings occurred. Dkt. 6-4 at 146. There is no reasonable probability that a different approach to impeachment would have resulted in acquittal.

### B. Failure to investigate and call S.C. (Ground 3)

Mr. Flagg argues that counsel was ineffective for failing to investigate Ms. Radford's nine-year-old nephew, S.C. The state post-conviction appellate court rejected this claim on the merits:

> Counsel has a duty to make reasonable investigations, but a petitioner cannot prevail upon a claim of ineffectiveness for failure to investigate witnesses or issues unless he can show that the outcome of his case would likely have been different had counsel further investigated. Here, Flagg asserts that S.C. would have contradicted his aunt Lamonica's identification of Flagg, but this appears to be speculative. At the post-conviction hearing, no testimony or affidavit was submitted to establish what identification testimony S.C. might have provided. Flagg has not met his burden of proof.

*Flagg II*, 2018 WL 2144364, at *7 (quotation marks and citation omitted).

The Indiana Court of Appeals was not unreasonable for demanding an affidavit or testimony from the potential eyewitness. Indeed, a federal court likely would have required the same. *See Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) ("A *Strickland* claim based on counsel's failure to investigate a potential witness requires a specific, affirmative showing of what the missing witness's testimony would be, and this typically requires at least an affidavit from the overlooked witness.").

To the extent Mr. Flagg argues that counsel should have called S.C. to testify based on his pre-trial statements to police (that no one threatened him on the night of the shootings), that argument also fails. Trial counsel reviewed S.C.'s statements to police. Dkt. 6-13 at 113−14 (counsel testifying at state post-conviction hearing). And, based on those statements, counsel made a strategic decision not to call S.C.:

8

> In all honesty, Juan, I really cared about you and your case, and it was — there were so many children involved in that house that I thought a jury would not want to hear more children. I thought it would be too prejudicial to you. I don't, I don't recall this specific instance, but I do know that we did talk and we were very glad when [the prosecutor] said he was not calling [S.C.], because we actually did not want this kid called.

Dkt. 6-13 at 113−14.

Counsel's informed strategic decisions are presumptively reasonable. *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012). Presumption aside, counsel's decision here simply was reasonable. If S.C. testified that no one threatened him on the night of the shooting, that testimony at best would have impeached Ms. Radford on a point tangential to Mr. Flagg's guilt. Counsel reasonably concluded that, given the circumstances of Mr. Flagg's crimes, such testimony was not worth exposing the jury to another child witness.

### C. Failure to move for severance (Ground 4)

Mr. Flagg argues that counsel was ineffective for not filing a motion to sever his cocaine dealing charge (and related charges) from his murder, attempted murder, robbery, and aggravated battery charges. The Indiana Court of Appeals held that any motion for severance would have failed under Indiana law. *Flagg II*, 2018 WL 2144364, at *3.

Severability is a question of state law, and on federal collateral review, this Court may not disturb a state court's resolution of a state law question. *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Counsel was not ineffective for failing to file a futile motion. *See Miller*, 820 F.3d at 277 (denying habeas relief where counsel failed to make challenge that would have been futile under Indiana law).

### D. Failure to object to DNA evidence (Ground 5)

Mr. Flagg argues that counsel was ineffective for failing to move to suppress all DNA evidence. Specifically, he argues that the DNA evidence was contaminated or "swapped out" and that the chain of custody was not maintained.

The Indiana Court of Appeals reviewed the evidence from the post-conviction evidentiary hearing and rejected Mr. Flagg's allegations:

> At the post-conviction hearing, Flagg proceeded pro-se and explained the crux of his DNA argument was that the samples used at his trial had been "planted." He asserted that Fishburn never received his DNA swab, and he elicited testimony from crime lab employees Fishburn, Melissa Wilson, and Sangeeta Joshi ("Joshi") regarding their handling of evidence. However, their testimony did not support Flagg's argument.
>
> Joshi testified that she handled the DNA swabs submitted for Fishburn's testing and specified that she "didn't swap out" samples. Flagg expressed concern that State's Exhibit 96, a large envelope, had not been delivered to Fishburn and Joshi responded to this concern at some length. She explained that she had received buccal swabs for DNA analysis from Detective Marcus Kennedy. The swabs were initially in a large envelope; however, Joshi repackaged the swabs into small coin-type envelopes and placed them in a transfer box for analysis. Fishburn testified that she received the coin-type envelopes and not the larger envelope. She further testified that the coin-type envelopes were taken to court and that she had "followed protocol" in providing the trial exhibits. She explained that the crime lab employees used an electronic tracking system and each was required to scan a bar code upon transfer of an item. According to Fishburn, an up-to-date chain of custody was maintained in this manner. Fishburn, like Joshi, explicitly denied that evidence had been "swapped."
>
> To the extent Flagg now argues that contaminated DNA results were submitted into evidence by the State or that there was a break in the chain of custody, which might have prompted his counsel to object, the evidence presented at the post-conviction hearing does not point unerringly to a result opposite that reached by the post-conviction court.

*Flagg II*, 2018 WL 2144364, at *6.

Mr. Flagg presents no contradictory evidence, let alone evidence to clearly and convincingly rebut the state court's factual findings. *See* 28 U.S.C. § 2254(e)(1). Based on those

10

factual findings, the state appellate court reasonably concluded that counsel was not ineffective for failing to challenge the DNA evidence. That alone bars habeas relief. 28 U.S.C. § 2254(d).

But even if counsel somehow could have succeeded in suppressing the DNA evidence, there is no prejudice. The prosecution acknowledged in closing argument that the DNA evidence was not compelling: "[Defense counsel] mentioned the DNA. Well, you heard the testimony from Dr. Fishburn. She can't say it's him, but she can't say it's not him. So that kind of gets us [nowhere]." Dkt. 6-6 at 62; *see also id.* at 57 (defense counsel arguing, "This is not a case where . . . there is DNA analysis that makes or breaks anything"). There is no reasonable probability that exclusion of the inconclusive DNA evidence would have caused the jury to acquit.

## IV. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Put differently, the petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Where, as here, some claims (or allegations of deficient performance) are rejected on procedural grounds, the petitioner must show both that a reasonable jurist could disagree with the

11

district court's resolution of the procedural question and that a reasonable jurist could resolve the constitutional question in the petitioner's favor.

Here, reasonable jurists would not dispute that Grounds 1, 6, and 7 are procedurally defaulted because Mr. Flagg failed to raise them through one complete round of the ordinary state appellate process. And reasonable jurists would not dispute that Grounds 2, 3, 4, and 5 are without merit, barred by § 2254(d), or both. Therefore, a certificate of appealability is **denied**.

## V. Conclusion

Mr. Flagg's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 6/24/2019

_William T. Lawrence_

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

JUAN FLAGG
121969
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov